Lance Croffoot-Suede
Martin S. Bloor
Chris Howard
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(+1) 212 903 9000 (Tel)
(+1) 212 903 9100 (Fax)

*Attorneys for Alfredo Davis*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                        11 CR 295 (AKH)

ALFREDO DAVIS,

                Defendant.

---------------------------------------------------------------x

## MEMORANDUM OF LAW OF DEFENDANT ALFREDO DAVIS IN SUPPORT OF HIS MOTION TO WITHDRAW HIS GUILTY PLEA

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

        A.      Procedural History ..............................................................................................2

        B.      Preparation for Trial ............................................................................................2

        C.      The Plea ...............................................................................................................3

        D.      The Decision to Withdraw His Plea ....................................................................5

ARGUMENT .................................................................................................................................5

I.      MR. DAVIS HAS SHOWN A FAIR AND JUST REASON TO WITHDRAW
       HIS GUILTY PLEA .............................................................................................................5

        A.      The threat of a 182-year sentence and notification from the Court
                during his plea that a co-defendant exculpated him combined to make Mr.
                Davis's plea involuntary .....................................................................................7

        B.      The timing of Mr. Davis's motion militates in favor of finding that he
                entered his plea in haste and without rationally weighing his options ...............10

        C.      Little or no prejudice to the Government will result if Mr. Davis's
                plea is withdrawn ...............................................................................................11

CONCLUSION ............................................................................................................................12

i

## TABLE OF AUTHORITIES

**Page**

### CASES

*Brady v. United States*,
397 U.S. 742 (1970) ..................................................................................................7

*Jones v. Barnes*,
463 U.S. 745 (1983) ................................................................................................13

*Kercheval v. United States*,
274 U.S. 220 (1927) ..................................................................................................6

*Miller v. Angliker*,
848 F.2d 1312 (2d Cir. 1988) ...................................................................................7

*Schaffner v. Greco*,
458 F. Supp. 202 (S.D.N.Y. 1978) ...........................................................................9

*United States v. Couto*,
311 F.3d 179 (2d Cir. 2002) .....................................................................................6

*United States v. Doe*,
537 F.3d 204 (2d Cir. 2008) .....................................................................................6

*United States v. Fernandez*,
734 F. Supp. 599 (S.D.N.Y. 1990), *aff'd*, 932 F.2d 956 (2d Cir. 1991) ................11

*United States v. Franco*,
No. 00 CR. 300 (LMM), 2003 WL 21305352 (S.D.N.Y. June 6, 2003) ............8, 10

*United States v. Garcia*,
No. 03 CR. 1098 (HB), 2004 WL 3019501 (S.D.N.Y. Dec. 29, 2004) ...............7, 12

*United States v. Gonzalez*,
970 F.2d 1095 (2d Cir. 1992) ...................................................................................6

*United States v. Gonzalez*,
647 F.3d 41 (2d Cir. 2011) ...................................................................................6, 7

*United States v. Hernandez*,
No. 99 CR. 73 (AGS), 2002 WL 31098505 (S.D.N.Y. Sept. 18, 2002) ..................10

*United States v. Jackson*,
No. 02 CR. 756 (LMM), 2005 WL 323715 (S.D.N.Y. Feb. 10, 2005) ...................10

*United States v. Millan-Colan*,
829 F. Supp. 620 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 14 (2d Cir. 1994) .................................... 11, 12

*United States v. Moore*,
No. 00 CR 1077(LMM), 2004 WL 1542262 (S.D.N.Y. July 8, 2004) ........................................... 9

*United States v. Nieto-Ayala*,
No. 05 Cr. 203 (LMM), 2005 U.S. Dist. LEXIS 17497 (S.D.N.Y. Aug. 18, 2005) ...................... 6

*United States v. Rosen*,
409 F.3d 535 (2d Cir. 2005) ........................................................................................................ 6

*United States v. Rowe*,
No. 02 CR. 756 (LMM), 2005 WL 659197 (S.D.N.Y. Mar. 21, 2005) .................................. 9, 11

*United States v. Saft*,
558 F.2d 1073 (2d Cir. 1977) ..................................................................................................... 6

*United States v. Schmidt*,
373 F.3d 100 (2d Cir. 2004) ..................................................................................................... 10

*United States v. Tateo*,
214 F. Supp. 560 (S.D.N.Y. 1963) .............................................................................. 6, 7, 8, 13

*Ventura v. Meachum*,
957 F.2d 1048 (2d Cir. 1992) ..................................................................................................... 7

## STATUTES & RULES

18 U.S.C. § 2 .................................................................................................................................. 2

18 U.S.C. § 924 .............................................................................................................................. 2

18 U.S.C. § 1951 ............................................................................................................................ 2

Fed. R. Crim. P. 11 ................................................................................................................ 1, 5, 6

Fed. R. Crim. P. 32 .................................................................................................................. 6, 10

## OTHER AUTHORITIES

1A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 181
(4th ed.) ......................................................................................................................................... 6

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Alfredo Davis, through his undersigned counsel, respectfully submits this Memorandum of Law in Support of His Motion to Withdraw His Guilty Plea.

## PRELIMINARY STATEMENT

On April 20, 2012, Alfredo Davis pled guilty to one count of Hobbs Act robbery conspiracy and one count of brandishing a firearm in connection with that conspiracy. Mr. Davis agreed to plead guilty at the insistence of his counsel, and under the Government's threat to file a Superseding Indictment that would have exposed him to a prison sentence totaling 182 years. During Mr. Davis's guilty plea, the Court informed him that a co-defendant, Jose Nales, told the Court that Alfredo Davis was not involved in the robbery for which he was pleading guilty. Upon hearing this information from the Court, Mr. Davis hesitated to proceed with the plea, though he ultimately went forward at the urging of his court-appointed attorney. Immediately after pleading guilty, Mr. Davis informed his attorney that he wished to withdraw his plea.

On June 1, 2012, Mr. Siegel, recognizing that an ethical conflict might result from his continued representation, requested that he be relieved as counsel so that Mr. Davis could pursue a withdrawal of his guilty plea. The Court granted the request insofar as it appointed temporary conflict counsel on June 29, 2012, who met with Mr. Davis and confirmed that the decision to withdraw his plea was made knowingly and intelligently. Thereafter, on August 7, 2012, undersigned CJA counsel were appointed to Mr. Davis's case and confirmed with the Court on September 24, 2012, that Mr. Davis wished to withdraw his guilty plea.

As demonstrated below, Mr. Davis has provided a "fair and just reason" to withdraw his guilty plea for a number of reasons. First, Mr. Davis has timely moved for the withdrawal of his plea. Second, the Government will not suffer prejudice if Mr. Davis is allowed to proceed to

1

trial. Third, Mr. Davis's plea, offered under the duress of a possible prison sentence totaling 182 years, was not voluntary as he could not rationally weigh his options after hearing from the Court that a co-defendant stated at his plea hearing that Mr. Davis was not involved in one of the alleged robberies. In light of the foregoing, Mr. Davis should be allowed to withdraw his guilty plea and proceed to trial.

## STATEMENT OF FACTS

### A. Procedural History

On March 21, 2011, Mr. Davis was charged by criminal complaint with three counts, including Hobbs Act robbery conspiracy and Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2, and possession of a firearm in furtherance, during, and in relation to violent crime, in violation of 18 U.S.C. § 924(c). (Docket No. 1). Nine days later, an Indictment was filed charging Mr. Davis with five counts and his co-defendant, Jose Nales, with two counts.[1] (Docket No. 5). At his arraignment on April 15, 2011, Mr. Davis pled not guilty to each count. (Docket Minute Entry 4/15/11). The government's case against Mr. Davis expanded to six counts when a Superseding Indictment was filed on August 8, 2011.[2] (Docket No. 8).

### B. Preparation for Trial

In anticipation of trial, Mr. Davis and his court-appointed counsel, Jesse M. Siegel, filed pre-trial motions to suppress a cellphone and other physical evidence seized at the time of his

---

[1] Count One of the Indictment charged Mr. Davis and Mr. Nales with Hobbs Act robbery conspiracy. Count Two charged Mr. Davis and Mr. Nales with Hobbs Act robbery. Count Three charged Mr. Davis with Hobbs Act robbery. Count Four charged Mr. Davis and Mr. Nales with possession of a firearm in furtherance, during, and in relation to the robbery charged in Count Two. Count Five charged Mr. Davis with possession of a firearm in furtherance, during, and in relation to the robbery charged in Count Three. (Docket No. 5).

[2] Count One of the Superseding Indictment charges Mr. Davis, Mr. Nales, and Tyrone Alston with a Hobbs Act robbery conspiracy. Count Two charges Mr. Davis and Mr. Alston with Hobbs Act robbery. Count Three charges Mr. Davis and Mr. Nales with Hobbs Act robbery. Count Four charges Mr. Davis with Hobbs Act robbery. Counts Five and Six charge Mr. Davis with possession of a firearm in furtherance, during, and in relation to the robbery charged in Counts Three and Four.

2

arrest on March 19, 2011, together with statements made by Mr. Davis to police. (Docket No. 16). After extensive briefing related to the motions, the Court held a two-day evidentiary hearing on December 6 and 7, 2011. (Docket Nos. 33, 34). At the conclusion of the hearing, this Court ordered post-hearing briefing into whether valid consent had been given to officers who entered the apartment in which Mr. Davis was arrested, and whether, in the absence of consent, the officers has probable cause to enter the apartment.

Following the post-hearing briefing, the Government warned Mr. Davis and his counsel that if they continued on their current path to trial, the Government would "present to the grand jury a superseding indictment setting forth eight additional firearms counts, [thus] exposing the defendant to a mandatory minimum jail term of 182 years." Bloor Decl., Ex. A, at 2.[3]

## C.   The Plea

Mr. Davis repeatedly told his attorney that he did not want to plead guilty. *See id.*, Ex. B (Affidavit of Alfredo Davis ("Davis Aff.") ¶ 2); *see also id.*, Ex. C (Affirmation of Jesse M. Siegel ("Siegel Aff.") ¶ 2). Nevertheless, faced with the possibility of spending the remainder of his life in prison, Mr. Davis reluctantly decided to acquiesce at his attorney's insistence and plead guilty, thereby foregoing his right to trial. (Davis Aff. ¶ 5); *see also* (Siegel Aff. ¶ 6) (stating that Mr. Davis was "tortured about the decision to plead guilty"). A conference was scheduled on April 20, 2012, at which time it was understood that Mr. Davis would plead guilty to a two-count Superseding Information charging him with Hobbs Act robbery conspiracy and brandishing a firearm in connection with that robbery conspiracy. (Docket No. 54); Bloor Decl., Ex. D (Plea Hearing Transcript, April 20, 2012 ("April 20 Plea Tr.") at 2:2-4). Mr. Siegel was

---

[3]   References to "Bloor Decl." are to the declaration of Martin S. Bloor, dated October 10, 2012 and submitted in support of the Memorandum of Law of Defendant Alfredo Davis in Support of His Motion to Withdraw His Guilty Plea.

3

unsure if his client would go through with the plea, as he had observed for nearly a year his client's steadfast desire to pursue his right to trial. (Siegel Aff. ¶ 6).

Mr. Davis made it clear throughout the April 20 conference that he was hesitant about proceeding:

> MR. SIEGEL: If I could quickly interrupt, Mr. Davis has asked me to ask the court whether or not the court has decided his motion to reconsider, regarding the suppression hearing.
>
> THE COURT: No. I understood that Mr. Davis wanted to plead guilty so I stopped work on the suppression motion.

(April 20 Plea Tr. at 2:6-11). Moments later, Mr. Davis again hesitates at the prospect of pleading guilty and foregoing his right to trial:

> THE COURT: ... If you want to wait, you can, but I am not sure the government will wait. Anyway, do you want to talk with Mr. Siegel and let me know.
>
> (Pause)
>
> MR. SIEGEL: I believe Mr. Davis wants to proceed. Obviously, the court is free to inquire of him if he wants to proceed.

(*Id.* at 4:13-15).[4] Then, the Court informed Mr. Davis and Mr. Siegel that a co-defendant, Jose Nales, had absolved Mr. Davis of any wrongdoing:

> THE COURT: ... You should both know also that one of the co-defendants has told me that you are not guilty. Of course, that has nothing to do with his plea. He pled guilty but he told me that you are not guilty. If you have a dilemma, you go to trial, which is your constitutional right, you take a chance.

---

[4]   Mr. Davis was also hesitant when asked by the Court whether he was satisfied by Mr. Siegel's representation:

> THE COURT: Are you satisfied with [Mr. Siegel's] legal services?
> THE DEFENDANT: Yes.
> THE COURT: You seem to hesitate a minute.
> THE DEFENDANT: Yes.
> THE COURT: If you are not satisfied, stop.

(April 20 Plea Tr. at 8:12-16).

4

(*Id.* at 3:14-19). Upon hearing this, Mr. Davis was, understandably, confused as to its implication. (Davis Aff. ¶ 6). When Mr. Davis was asked by this Court whether he "want[ed] to think about it," Mr. Davis replied, "Yes." (April 20 Plea Tr. at 5:6-7). Instead of taking time to weigh his options rationally, Mr. Davis proceeded to plead guilty at the urging of his attorney, who said: "He said he's ready to go forward." (*Id.* at 5:9-10).

**D.    The Decision to Withdraw His Plea**

Hours after pleading guilty, Mr. Davis regretted his actions and informed his lawyer that he had made a mistake. (Davis Aff. ¶ 8). Mr. Siegel filed a letter with the Court on June 1, 2012, requesting that he be relieved as counsel to Mr. Davis. (Docket No. 65). On June 29, 2012, the Court appointed David Greenfield to act as conflict counsel to Mr. Davis as he made the decision to withdraw his plea. *See* Bloor Decl., Ex. E (Aug. 7, 2012 Hr'g Tr. at 2:9-18). Mr. Davis informed Mr. Greenfield that he wished to withdraw his guilty plea and pursue his right to trial. (Davis Aff. ¶ 9). Mr. Greenfield represented to the Court that Mr. Davis made the decision to withdraw his plea knowingly and intelligently. (Aug. 7, 2012 Hr'g Tr. at 3:3-10).

Having an opportunity to reflect fully on his options, Mr. Davis, through his newly-appointed CJA counsel, seeks to withdraw his guilty plea and effectuate his right to trial.

## ARGUMENT

I.  **MR. DAVIS HAS SHOWN A FAIR AND JUST REASON TO WITHDRAW HIS GUILTY PLEA.**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, a defendant may withdraw his guilty plea prior to sentencing upon showing a "fair and just reason" for the requested withdrawal. Fed. R. Crim. P. 11(d)(2)(B).[5] "This [fair and just] standard," as recognized by the Second Circuit, "implies that motions to withdraw prior to sentence should be liberally granted . . . ." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992). In addition, "[a] district court's discretion in determining whether or not to allow the withdrawal of a guilty plea has been described by the Second Circuit as both 'broad' and 'large.'" *United States v. Nieto-Ayala*, No. 05 Cr. 203 (LMM), 2005 U.S. Dist. LEXIS 17497 (S.D.N.Y. Aug. 18, 2005) (quoting *United States v. Couto*, 311 F.3d 179, 186 (2d Cir. 2002) and *United States v. Saft*, 558 F.2d 1073, 1082 (2d Cir. 1977)). The defendant bears the burden of demonstrating valid grounds for withdrawal. *United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011).

To determine whether a "fair and just reason" for withdrawal of a guilty plea exists, a district court weighs, *inter alia*: (1) the length of time that elapsed between the plea and the motion to withdraw; (2) whether the defendant has asserted a claim of legal innocence;[6] and (3) whether the government would be prejudiced by a withdrawal of the plea. *United States v. Doe*,

---

[5] The antecedents to Rule 11(d)(2)(B) were Fed. R. Crim. P. 32(d) (1983-1994) and 32(e) (1994-2002). *See United States v. Rosen*, 409 F.3d 535, 545 (2d Cir. 2005) (noting that "cases interpreting the former versions of Rule 32 are authority for the proper interpretation of the current Rule 11(d)(2)(B)").

[6] Mr. Davis is not required to assert his innocence in order to withdraw his guilty plea, and his innocence is, therefore, not addressed in this Motion. *See, e.g., Kercheval v. United States*, 274 U.S. 220, 224 (1927) ("[T]he court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence."); *United States v. Tateo*, 214 F. Supp. 560, 564 (S.D.N.Y. 1963) ("The defendant's guilt or innocence is not in issue on this motion. And neither the passage of time nor the absence of any showing that in the event of a new trial a different result is likely requires the denial of the defendant's motion."); *see also* 1A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 181 (4th ed.) ("It is surely a sensible rule to say that defendant's innocence is not a prerequisite to permitting a plea withdrawal, since even a guilty defendant whose plea is not voluntary or is the product of a broken promise should be permitted to replead.").

537 F.3d 204, 211 (2d Cir. 2008).

Where a motion to withdraw a plea is premised on involuntariness, "*a fortiori* the court must focus on voluntariness." *United States v. Rosen*, 409 F.3d 535, 548 (2d Cir. 2005). "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Gonzalez*, 647 F.3d at 56 (quoting *Brady v. United States*, 397 U.S. 742, 749 (1970)). The standard to determine if a guilty plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992). A plea is voluntary only "if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh the options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). As demonstrated below, Mr. Davis's plea was not voluntary.

### A. The threat of a 182-year sentence and notification from the Court during his plea that a co-defendant exculpated him combined to make Mr. Davis's plea involuntary

Upon close examination of the circumstances surrounding Mr. Davis's plea, it is apparent that his plea was not voluntary. *See Brady v. United States*, 397 U.S. 742, 749 (1970) ("The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it."). Whenever "it appears that a guilty plea is the product of coercion, either mental or physical, or was unfairly obtained or given through ignorance, fear or inadvertence, it must be vacated as void since it is violative of constitutional safeguards." *United States v. Tateo*, 214 F. Supp. 560, 565 (S.D.N.Y. 1963); *see also United States v. Garcia*, No. 03 CR 1098 (HB), 2004 WL 3019501, at *4 (S.D.N.Y. Dec. 29, 2004) ("[I]t it is far better to err on the side of caution and grant a defendant's motion to withdraw his plea where the circumstances suggest that there may have been an actual or perceived encroachment on his rights.").

7

As Judge Weinfeld articulated in *Tateo*, probing the voluntariness of a guilty plea presents unique challenges.

> The issue of whether the guilty plea was in fact voluntary or the product of mental coercion cannot be determined with mathematical precision. Of necessity we deal in probabilities in deciding whether the defendant, at the time he pled guilty, had that free will essential to a reasoned choice either to continue with the trial or to enter a plea of guilty. Its determination involves an evaluation of psychological factors and elements that may be reasonably calculated to influence the human mind.

*Tateo*, 214 F. Supp. at 565 (footnotes omitted).

Courts in this District have routinely permitted a defendant to withdraw a plea of guilty when, faced with external forces inducing the plea, the defendant did not have an adequate opportunity to reflect on his options. *See, e.g., id.* (granting withdrawal and vacating judgment of conviction where statements made by the trial judge, combined with pressure from defendant's lawyer to plead guilty, denied defendant "that capacity for reasoned choice, that freedom of will which is essential to a voluntary plea of guilty").

For example, in *United States v. Franco*, No. 00 CR 300 (LMM), 2003 WL 21305352, at *5 (S.D.N.Y. June 6, 2003), the court observed "that a defendant, under perfectly proper advice from fully competent counsel, may, at the time of a plea, under certain circumstances, be acting less than fully voluntarily." The defendant in *Franco* pled guilty after consulting with his retained counsel and with his CJA counsel and after allocating that he was satisfied with his legal representation. Nevertheless, the court permitted defendant to withdraw his plea because the defendant averred that he was pressured due to statements made by retained counsel that if he did not accept the plea agreement the government would go to trial, "and it was life imprisonment if I lost." *Id.* at *1. Moreover, the court expressed its concern that it gave "an impression that it was seeking a very fast disposition of the case, which impression . . . may have prevented

8

defendant from taking the time to fully reflect on the options with CJA counsel's assistance, and thus unduly affected his decision to plead guilty." *Id.* at *6. Taken together, the court determined these two facts were more than sufficient to withdraw the guilty plea. *Id.*; *see also United States v. Moore*, No. 00 CR 1077 (LMM), 2004 WL 1542262, at *1 (S.D.N.Y. July 8, 2004) (granting permission to withdraw guilty plea where the defendant "felt pressured . . . to a degree that he did not fully reflect on his options with the assistance of counsel").

Similarly, the duress of facing a long prison sentence and the inability of a defendant to rationally weigh his options warranted the withdrawal of a guilty plea in *United States v. Rowe*, No. 02 CR 756 (LMM), 2005 WL 659197, at *2 (S.D.N.Y. Mar. 21, 2005). In *Rowe*, the defendant claimed that he felt "considerable time pressure" when deciding whether to plead, and he was not "focused" on what he was doing. In light of these considerations, the court was "not able to conclude that defendant . . . was able to 'weigh his options rationally.'" *Id.* (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1998)).

In this case, just as the defendants in *Franco* and *Rowe* faced the prospect of long sentences if they did not plead guilty and were convicted, here, Mr. Davis was warned by the Government and his own attorney that if he did not plead and lost at trial, he would spend the rest of his life in prison. (Davis Aff. ¶ 4); (Siegel Aff. ¶ 3). Moreover, as Mr. Davis stood before the Court on April 20, 2012, he expected to plead guilty; he did not expect to hear from the Court that it had exculpatory information absolving him of the very robbery for which he was pleading guilty.[7] *See Schaffner v. Greco*, 458 F. Supp. 202, 206 (S.D.N.Y. 1978) ("[I]t would be unrealistic not to recognize that, because of the unmatched power which a trial judge exerts over the fate of the defendant, any action on his part is enormously significant to the defendant."); *see*

---

[7] Although Mr. Davis had heard Mr. Nales make similar statements when not under oath, hearing from Judge Hellerstein that Mr. Nales exculpated him during Mr. Nales's own plea hearing carried particular weight. (Davis Aff. ¶ 6).

9

*also* (April 20 Plea Tr. 3:16-17) ("[Jose Nales] pled guilty but he told me that you are not guilty."). Mr. Davis did not have an opportunity to weigh his options rationally in light of the Court's statements and the already considerable duress he was under to plead guilty. (Davis Aff. ¶ 6). As made clear in the hearing transcript, Mr. Davis hesitated after he was told about Mr. Nales's statements. In fact, when asked directly from the Court whether he wanted to think about pleading guilty, Mr. Davis responded in the affirmative. (April 20 Plea Tr. at 5:6-7). Then, without spending the necessary time to reflect on the decision he was being asked to make, Mr. Davis went forward with the guilty plea at the urging of his counsel. The involuntary nature of Mr. Davis's plea necessitates that Mr. Davis be allowed to withdraw his guilty plea and proceed, as has been his desire from the beginning of this case, to a trial.

  **B.**  **The timing of Mr. Davis's motion militates in favor of finding that he entered his plea in haste and without rationally weighing his options**

Immediately after pleading guilty, Mr. Davis recognized that he made a mistake and sought legal help to withdraw his plea. (Davis Aff. ¶ 8); (Siegel Aff. ¶ 7). "[T]he longer the elapsed time" between entering a plea and seeking to withdraw it, "the less likely withdrawal would be fair and just." *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004); *see also* Fed. R. Crim. P. 32 advisory committee's note (1983 amendment) ("A swift change of heart is itself strong indication that the plea was entered in haste and confusion.").

In *United States v. Hernandez*, No. 99 CR 73 (AGS), 2002 WL 31098505, at *5 (S.D.N.Y. Sept. 18, 2002), the defendant "announced his desire" to withdraw his guilty plea one month after he entered his plea. This Court found that defendant's one-month delay between pleading guilty and signaling his intention to withdraw the plea was "not excessively long." *Id.*; *see also Franco*, 2003 WL 21305352, at *5 (permitting withdrawal where the motion was filed three and a half months after pleading guilty); *United States v. Jackson*, No. 02 CR 756 (LMM),

10

2005 WL 323715, at *2 (S.D.N.Y. Feb. 10, 2005) (same).

As evidenced by the timeline in this case, Mr. Davis acted as quickly as possible to withdraw his plea. First, he alerted his attorney, Jesse Siegel, immediately after pleading guilty that he wanted to withdraw his plea. (Davis Aff. ¶ 8); (Siegel Aff. ¶ 7). Next, when Mr. Siegel asked to be discharged from the case because of Mr. Davis's desire to withdraw his guilty plea, Mr. Davis immediately alerted his conflicts counsel that he wished to withdraw his plea. (Davis Aff. ¶ 9); (Aug. 7, 2012 Hr'g Tr. at 3:9-10). Finally, when new CJA counsel was appointed to this case, Mr. Davis again signaled his intent to file the present motion as soon as possible. Mr. Davis's swift change of heart following his guilty plea, therefore, serves as a strong indicator that his guilty plea was entered in haste, without rationally considering his options.

### C.  Little or no prejudice to the Government will result if Mr. Davis's plea is withdrawn

The Government will not suffer prejudice of a magnitude that would justify barring the withdrawal of Mr. Davis's guilty plea. "Even if a defendant fails to demonstrate any valid grounds supporting a motion to withdraw a guilty plea, in balancing the equities, the Court may grant the motion if little or no prejudice to the Government would result." *United States v. Millan-Colan*, 829 F. Supp. 620, 636 (S.D.N.Y. 1993) (citing *United States v. Fernandez*, 734 F. Supp. 599, 604 (S.D.N.Y. 1990), *aff'd*, 932 F.2d 956 (2d Cir. 1991)), *aff'd*, 17 F.3d 14 (2d Cir. 1994).

For instance, in *Rowe*, 2005 WL 659197, at *3, the government argued that it would be prejudiced by having to prepare again several witnesses to testify. In granting defendant's request to withdraw his plea, the court found that "the prejudice of having to prepare several witnesses again is not of the magnitude that will bar the withdrawal of a guilty plea." *Id.*; *see also Millan-Colon*, 829 F. Supp. at 636 (finding no prejudice to the government where

11

reinstating two guilty pleas would not force the government to reconstruct its case since the trial of the remaining defendants had not yet occurred); *United States v. Garcia*, No. 03 CR 1098 HB, 2004 WL 3019501, at *4 (S.D.N.Y. Dec. 29, 2004) (allowing defendant to withdraw plea of guilty where proceeding to trial for robbery would not "overly tax the Government").

Here, the Government will be in precisely the same position in trying this case now as it was on April 20, 2012. Since Mr. Davis's two co-defendants have pled guilty, the Government will not have to reconstruct its case or rely upon witnesses already cross-examined. Moreover, this is not a case where the Government has stated its intent to rely heavily on eyewitness testimony; instead, it plans to rely on surveillance video and cell phone records:

> THE COURT: Is there any eyewitness testimony that you plan to bring putting Mr. Davis at the scene of the bodega robberies.
>
> MS. MOYNE: At this point, no, although all of the civilians have not been asked whether or not they could recognize Mr. Davis. It's not to say there wouldn't be, but at this point I don't know of any witnesses.

(April 20 Plea Tr. at 17:18-24). The lack of prejudice to the Government resulting from this Court granting Mr. Davis's request to withdraw his guilty plea forms a complete and independent basis for permitting Mr. Davis to withdraw his guilty plea. *Millan-Colan*, 829 F. Supp. at 636.

## CONCLUSION

This Motion seeks nothing more than to provide Mr. Davis with the right he possessed when indicted – the right to stand trial. Because Mr. Davis has provided "fair and just reason[s] for requesting the withdrawal," including: (i) his timely request to withdraw the plea, (ii) the lack of prejudice suffered by the Government, and (iii) the involuntary nature of the plea, Mr. Davis should be allowed to withdraw his plea and be permitted to stand trial. He should not be arbitrarily or unfairly deprived of that right. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983)

("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *Tateo*, 214 F. Supp. at 565 ("A defendant has a fundamental right to stand trial and to require the Government to establish the charges against him in accordance with substantive and procedural due process requirements of the Federal Constitution.").

For the reasons stated herein, and whatever further reasons the Court may deem appropriate, Alfredo Davis respectfully requests that this Motion to Withdraw His Guilty Plea be granted in full and that this case be set for trial.

Dated:   October 10, 2012
         New York, New York

                                        Respectfully submitted,
                                        Linklaters LLP

                                   By:  /s/ Martin S. Bloor
                                        Lance Croffoot-Suede
                                        Martin S. Bloor
                                        Chris Howard
                                        1345 Avenue of the Americas,
                                        New York, NY 10105
                                        (212) 903-9000
                                        (212) 903-9100 (fax)

                                        *Attorneys for Alfredo Davis*