# Linklaters

*[Handwritten note:]* The issues described may be raised at the evidentiary hearing. I shall rule dispositively at that time.
10-18-12
*/s/ Alvin K. Hellerstein*

Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9000
Direct (+1) 212 903 9266
Facsimile (+1) 212 903 9100
Email: martin.bloor@linklaters.com

*[Stamp:]* RECEIVED OCT 16 2012 CHAMBERS OF ALVIN K. HELLERSTEIN U.S.D.J.

By Fax

October 16, 2012

Re: **United States v. Alfredo Davis, 11 Cr. 295 (AKH)**

Dear Judge Hellerstein:

As counsel for Alfredo Davis in the above-captioned case, we write regarding the Court's Order, issued October 15, 2012, compelling Mr. Davis's former attorney, Jesse Siegel, to "offer live testimony on October 22, 2012, at 2:30 p.m. addressing the allegations made by the defendant and such other matters as may be relevant and proper." (Docket No. 84). As an initial matter, to the extent that the government intends to elicit testimony from Mr. Siegel, the defendant reserves the right to have Mr. Siegel offer live testimony on the topics that are set forth in his affidavit.

The Government has indicated that it would seek Mr. Siegel's testimony on four topics, specifically: (1) communications about exculpatory claims made by Davis's co-defendant, Jose Nales, and the relationship between Nales's statements and Davis's decision to plead guilty; (2) statements made during the guilty plea proceeding itself that relate to Nales's statements; (3) conversations prior to Davis's plea regarding counsel's advice to Mr. Davis to plead guilty; and (4) communications after the plea relating to Davis's desire to withdraw his guilty plea. See Letter from Parvin Moyne/Glen McGorty, Assistant United States Attorneys, dated October 12, 2012, and addressed to the Honorable Alvin K. Hellerstein, at 2.

As discussed below, the Government's requested topics are overly broad and insufficiently related to the subject matter of the communications already disclosed by the defendant and Mr. Siegel. We respectfully request, therefore, that the scope of Mr. Siegel's testimony be narrowly tailored in accordance with Federal Rule of Evidence 502(a).

**Defendant and his attorney have disclosed attorney-client communications on three topics**

On October 10, 2012, Alfredo Davis filed a Motion to Withdraw His Guilty Plea that included an affirmation submitted by Mr. Siegel and an affidavit submitted by Mr. Davis discussing, *inter alia*, contents of certain

This communication is confidential and may be privileged or otherwise protected by work product immunity.

Linklaters LLP is a multinational limited liability partnership registered in England and Wales with registered number OC326345 including solicitors of the Senior Courts of England and Wales; members of the New York Bar and foreign legal consultants in New York. It is a law firm authorised and regulated by the Solicitors Regulation Authority. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ, England or on www.linklaters.com

Please refer to www.linklaters.com/regulation for important information on our regulatory position.

Linklaters

attorney-client communications. The disclosed communications recounted in Mr. Siegel's affirmation and Mr. Davis's affidavit can be categorized into three topics:

1. **Mr. Davis's desire to not plead guilty.** See Affirmation of Jesse M. Siegel ("Siegel Aff.") ¶ 2, attached as Ex. C to Def. Motion ("[Alfredo Davis] told me that he did not want to plead guilty."); *id.* ¶ 6 ("When the day came for Mr. Davis to plead guilty, I was unsure he would go through with it, particularly because he had been so adamant about pursuing the outstanding suppression motion and proceeding to trial."); Affidavit of Alfredo Davis ("Davis Aff.") ¶ 2, attached as Ex. B to Def. Motion ("I repeatedly told my former attorney in this case . . . that I did not want to plead guilty and that I wanted to proceed to trial.");

2. **Mr. Siegel's advice to plead guilty.** See Siegel Aff. ¶ 3 ("I urged Mr. Davis to consider pleading guilty . . . ."); *id.* ¶ 5 ("I recommended to Mr. Davis that it would be in his best interest to plead guilty . . ."); Davis Aff. ¶ 3 ("Mr. Siegel told me on a number of occasions that I should plead guilty in order to avoid a long prison sentence."); *id.* ¶ 5 ("[A]t the urging of my attorney, I decided to plead guilty on April 20, 2012."); and

3. **Mr. Davis's prompt decision to withdraw his guilty plea.** See Siegel Aff. ¶ 7 ("Shortly after Mr. Davis pled guilty, he informed me that he wished to withdraw his plea. Over the course of several conversations with Mr. Davis, he repeated his desire to withdraw his plea and proceed to trial."); Davis Aff. ¶ 8 ("Following the hearing on April 20, 2012, I spoke with Mr. Siegel later that day and informed him that I wanted to withdraw my plea.").

**The Government seeks testimony on unrelated and undisclosed topics outside the permissible scope of disclosure**

When a disclosure of privileged communications is made, Federal Rule of Evidence 502(a) governs the scope of the waiver as to undisclosed communications. Under Rule 502(a), attorney-client privilege is only waived as to undisclosed communications if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). The Advisory Committee Note makes clear the limited scope of this intentional waiver provision, stating that "a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note; see also *Seyler v. T-Systems N. Am., Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) (characterizing waiver provision as "narrow"); *In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, No. M8-85, 1997 WL 118369, at *3-4 (S.D.N.Y Mar. 14, 1997) (noting that the fairness doctrine requires a waiver to be "narrowly tailored to address the potential prejudice to the parties attacking the privilege").

Here, the first topic requested by the Government is unrelated to the subject matter of the communications disclosed by Mr. Siegel and Mr. Davis and therefore should not be required to be disclosed. The Government seeks testimony concerning "communications throughout the prosecution about the 'exculpatory' claims made by Davis' co-defendant Jose Nales, . . . and the relationship between Nales' statements and Davis' decision whether or not to go to trial." Letter from Parvin Moyne/Glen McGorty, at 2. Neither Mr. Siegel nor Mr. Davis have disclosed any privileged communications concerning claims made by Jose Nales. As such, Mr. Siegel should not be compelled to testify on these matters.

Linklaters

The Government's second requested topic is similarly defective. The Government seeks testimony from Mr. Siegel concerning "statements made during the guilty plea proceeding itself which relate to the Court's comment about Nales' statements regarding Davis' guilt . . . ." *Id.* Here, again, neither Mr. Siegel nor Mr. Davis have disclosed privileged communications on this subject matter. The Government has no right to elicit testimony from Mr. Siegel on this topic.

Lastly, although requested topics number three and four touch tangentially on information disclosed in defendant's Motion, we respectfully request that any testimony should be narrowly limited in scope to include only the subject matter of the information previously disclosed in defendant's Motion. *See in re Leslie Fay Companies, Inc. Secs. Litig.*, 161 F.R.D. 274, 284 (S.D.N.Y. 1995) ("We note that an equitable piercing of the attorney-client privilege should be narrowly tailored to address the potential prejudice to the party attacking the privilege."). Limiting the scope of testimony not only comports with Rule 502(a), it also limits the possibility that Mr. Siegel may be forced to divulge incriminating evidence told to him in confidence by his former client

Thank you for your attention to this matter.

Respectfully submitted,

Martin S. Bloor

cc: Parvin Moyne/Glen McGorty, Assistant United States Attorneys (by fax)
Jesse Siegel, Esq. (former counsel for Mr. Davis)