Lance Croffoot-Suede
Martin S. Bloor
Chris Howard
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
212 903 9000 (Tel)
212 903 9100 (Fax)

*Attorneys for Alfredo Davis*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| United States of America, | |
| v. | 11 Cr. 295 (AKH) |
| Alfredo Davis, | |
| Defendant. | |

---

## MEMORANDUM OF LAW OF DEFENDANT ALFREDO DAVIS IN FURTHER SUPPORT OF HIS MOTION TO WITHDRAW HIS GUILTY PLEA

Defendant, through his undersigned attorneys, respectfully submits this memorandum of law in further support of his motion to withdraw his guilty plea.

### PRELIMINARY STATEMENT

The Government's response goes on for 42 pages. Yet for all their arguments, the Government concedes the key considerations that are relevant to whether a defendant has shown a fair and just reason to allow the withdrawal of a guilty plea. The Government concedes that Mr. Davis timely informed the Court of his desire to withdraw his guilty plea and concedes that the Government would suffer no prejudice. Instead, the Government tries to minimize the impact of (1) Mr. Davis being threatened with a sentence of 182 years in prison if he did not

plead guilty, (2) the Court's acknowledgement for the first time moments before Mr. Davis entered his guilty plea that his co-defendant had claimed that Mr. Davis was innocent, and (3) the pressure being exerted by Mr. Davis' counsel for him to take the guilty plea. The Government goes on page after page attempting to demonstrate that Mr. Davis' plea was voluntary. But when one considers Mr. Davis' subjective state of mind at the time he entered his plea – as the Court must – it becomes clear that the plea was not voluntary. This is buttressed by the fact that Mr. Davis almost immediately expressed his desire to withdraw his plea. In any event, there is no legal requirement that Mr. Davis demonstrate that his plea was not voluntary. The law only requires that a defendant set forth a fair and just reason warranting withdrawal and leaves the decision as to whether to permit a defendant to do so to the sound discretion of the trial court. For the reasons set forth below and in the Defendant's opening memorandum, Mr. Davis has adequately set forth a fair and just reason and he should be permitted to exercise his right to stand trial and put the Government to its proof.

## ARGUMENT

I. THE GOVERNMENT EXAGGERATES THE STRICTNESS OF THE LEGAL STANDARD RELATING TO MOTIONS UNDER RULE 11 AND FOCUSES ON ISSUES THAT HAVE NO LEGAL RELEVANCE

As an initial matter, the Government paints the standard to withdraw a guilty plea as an insurmountable barrier for a defendant to overcome. The Federal Rules of Criminal Procedure and case law clearly suggest otherwise. To withdraw his guilty plea, Mr. Davis need only show a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Although the Government misleadingly states that the "Second Circuit has *never* suggested these motions should be liberally granted," (Resp. at 21 n.3) (emphasis in original), the Second Circuit, in accordance with other circuit courts, acknowledged that the text of Rule 11 "implies that motions to withdraw prior to sentence should be liberally granted . . . ." *United States v.*

*Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992); *accord United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009) ("The fair and just standard is generous and must be applied liberally."); *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005) (observing that "[t]he 'fair and just' standard is a liberal one"); *United States v. Hickok*, 907 F.2d 983, 985 (10th Cir. 1990) ("Even though the general rule is that motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality, still the decision thereon is within the sound discretion of the trial court."); *Gov't of Virgin Islands v. Berry*, 631 F.2d 214, 219 (3d Cir. 1980) ("[M]otions to withdraw guilty pleas made before sentencing should be liberally construed in favor of the accused and should be granted freely.") (internal quotation marks and citations omitted throughout). As demonstrated below and in his motion, Mr. Davis has met this standard, and in doing so, has satisfied his burden of providing "fair and just reason[s]" for the withdrawal of his plea.

    A.    **This Court is afforded broad discretion in permitting Mr. Davis to withdraw his guilty plea and pursue his right to trial**

The decision whether to grant the motion to withdraw is committed to the district court's discretion, and the Second Circuit has described the latitude afforded the district court in this regard "as both 'broad' and 'large.'" *United States v. Nieto-Ayala*, No. 05 CR 203 (LMM), 2005 U.S. Dist. LEXIS 17497, at *13 (S.D.N.Y. Aug. 18, 2005) (quoting *United States v. Couto*, 311 F.3d 179, 186 (2d Cir. 2002), and *United States v. Saft*, 558 F.2d 1073, 1082 (2d Cir. 1977)). In *Saft*, 558 F.2d at 1082, Judge Friendly noted that "the large discretion confided to district judges in passing on motions to withdraw pleas of guilty" is "justified by the much better 'feel of the case' possessed by the judge . . . ." More recently, Judge Baer, recognizing the importance of pursuing one's right to trial, stated that "it is far better to err on the side of caution and grant a defendant's motion to withdraw his plea where the circumstances suggest that there may have

3

been an actual or perceived encroachment on his rights." *United States v. Garcia*, No. 03 CR 1098 (HB), 2004 WL 3019501, at *4 (S.D.N.Y. Dec. 29, 2004).

Here, this Court has acknowledged the importance of using its discretion to allow Mr. Davis to pursue his right to trial, stating:

> The defendant has a right to a speedy and public trial. It is my job to give it. A plea of guilty is an exception to that rule. It is a situation where a defendant knowingly and voluntarily, with an adequate basis in facts, takes the position that he doesn't want to avail himself of his constitutional rights. But there is a lot of time and liberty at stake with this motion, and *if the defendant wishes to try the case, unless I am bound not to allow him to do so, I will allow him to do so.*

(Aug. 7 Conf. Tr. at 12:20-13:3) (emphasis supplied). As is clear, the Court is not "bound not to allow him to do so." Further, in referring to a potential attempt by Mr. Davis to withdraw his guilty plea, this Court reasoned:

> *So if you were to make the motion, in all likelihood, it would be granted.* If it were not granted, I would give you plenty of time to brief the issue. But I think you can assume from what Ms. Moyne said and what I would say that Mr. Davis will get his wish to withdraw his plea.

(Id. at 11:22-12:1) (emphasis supplied).

### B.   Lost in the Government's 42-page brief is any substantive discussion of the relevant factors that courts must consider

Noticeably, in a 42-page brief, the Government spends fewer than three pages at the end of its brief discussing the factors that are critical in the instant analysis. As discussed in Defendant's opening brief, courts look to the following three factors to determine whether a "fair and just reason" exists to permit the withdrawal of a guilty plea. *United States v. Aly*, 341 F. App'x 662, 663 (2d Cir. 2009). First, courts consider the length of time that elapsed between the plea and the motion to withdraw. *Id.* The Government concedes that Mr. Davis has satisfied this factor, as "the defendant began the process of seeking to withdraw his plea on a timely basis."

4

(Resp. at 41). Here, Mr. Davis immediately sought to withdraw his guilty plea. (Davis Aff. ¶ 8); (Siegel Aff. ¶ 7). Defendant, therefore, has satisfied the first factor.

Second, a court considers "whether the *Government* would be prejudiced by a withdrawal of the plea." *United States v. Ramos*, No. 98 CR 1038 (SWK), 2005 WL 120230, at *1 (S.D.N.Y. Jan. 20, 2005) (citing Fed. R. Crim. P. 32(d) advisory committee's note (1983 amendment)) (emphasis supplied). Again, the Government effectively concedes this factor as it fails to articulate even one way the *Government* would be prejudiced by the withdrawal of the guilty plea. *See* Resp. at 41 ("[The Government] recognizes that the quantum of prejudice posed by withdrawal of the plea in this case would not be as great as there would be in other contexts, as cited by the defendant."). Instead, the Government looks to the supposed prejudice faced by alleged victims who would have to be contacted and told "that the defendant had changed his mind and now wanted to go to trial." Resp. at 41 n.5. As there is no showing that the Government would be prejudiced in any way, Mr. Davis has satisfied the second factor.

Finally, courts consider whether the defendant has asserted his legal innocence. Because Mr. Davis previously pled guilty under oath, and because the Government has indicated that he could face perjury charges were he to assert his innocence,[1] Mr. Davis takes no position on this third factor. Regardless, as the Government concedes, a claim of innocence "is not determinative of his Motion." (Resp. at 42); *see also Kercheval v. United States*, 274 U.S. 220, 224 (1927) ("Such an application [to vacate a plea of guilty] does not involve any question of guilt or innocence."). In sum, the relevant factors clearly weigh in granting Mr. Davis' motion to withdraw his guilty plea.

---

[1] (Aug. 7 Conf. Tr. at 4:5-8) ("MS. MOYNE: I do believe that the defendant risks perjury and other charges, but if he were to go to trial on the case that he allocated on, the government would not be allowed to introduce his plea at trial.").

5

## II. THE COMBINED EFFECT OF THE COURT'S COMMENTS AT THE PLEA HEARING REGARDING DEFENDANT NALES, THE THREAT OF A SENTENCE OF 182 YEARS AND HIS COUNSEL'S PRESSURE TO HAVE HIM PLEAD GUILTY RENDERED MR. DAVIS' PLEA INVOLUNTARY

The Government's argument that Mr. Davis' guilty plea was voluntary is defective for two reasons. First, the Government analyzed each of Mr. Davis' proffered reasons for involuntariness in isolation, failing to take into account their *combined* effect on his mental state. *See Ramos*, 2005 WL 120230, at *2 (withdrawing guilty plea and noting that "plea proceeding cannot be analyzed in a vacuum"). Courts in this Circuit have made it clear that voluntariness involves a consideration of *all* the "psychological and other factors that may reasonably be calculated to influence the human mind," which necessarily requires considering the "plea of guilty against the totality of events and circumstances which preceded its entry." *United States v. Colson*, 230 F. Supp. 953, 955 (S.D.N.Y. 1964) (quoting *United States v. Tateo*, 214 F. Supp. 560, 565 (S.D.N.Y. 1963)); *see also United States Rowe*, No. 02 CR 756 (LMM), 2005 WL 659197, at *3 (S.D.N.Y. Mar. 21, 2005) (noting the "totality of the circumstances" involved in deciding whether to permit withdrawal of a guilty plea). Here, Mr. Davis contends that there are three factors that *combined* to render his plea involuntary: (i) the threat of a 182 year sentence; (ii) the Court's comment about Nales' efforts to exculpate him; and (iii) the pressure put on him to plead guilty by his attorney. As set forth in the motion to withdraw his guilty plea, the combination of these three factors are sufficient to demonstrate involuntariness.

Second, the Government argues that the Court's comments about Nales' could not have an effect on Mr. Davis because "he was already aware Nales had made similar statements . . . . [t]hus, there was no surprise whatsoever." (Resp. at 33). To be clear, the "surprise" for Mr. Davis was not that Mr. Nales exculpated him, it was that the Court had considered, and apparently given weight to, Mr. Nales' statements. Up until that moment, Mr. Davis did not

6

know – and could not know – whether the Court had actually considered Mr. Nales' prior statements regarding Mr. Davis' involvement in the alleged robbery of 1182 West Farms Road.[2]

### III. CASE LAW IN THIS DISTRICT SUPPORTS PERMITTING MR. DAVIS TO WITHDRAW HIS GUILTY PLEA

The Government suggests that motions to withdraw a guilty plea are not often granted and represent an extraordinary remedy. (Resp. at 36). That is simply not the case. As an initial matter, because of the nature of a motion to withdraw a guilty plea, it is often decided without written decision. *See* 1A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 181 (4th ed.) ("Cases in which the trial court has granted leave to withdraw rarely are the subject of reported opinions . . ."). This is particularly true because the Government does not have the right to appeal in situations where the motion is granted. *See* 18 U.S.C. § 3731. Moreover, contrary to the Government's argument, the cases cited in Mr. Davis's opening brief are on point and support his position that he should be permitted to withdraw his guilty plea.

The Government implies that because three of the cases cited are authored by Judge McKenna, they are somehow of less precedential value. (Resp. at 36). That simply is not the case. Judge McKenna's cases are particularly relevant here because in those cases the court appropriately analyzes the subjective state of mind of the defendant at the time that he entered the guilty plea. Judge McKenna uniformly finds that the plea hearings were satisfactory and that the defendants' counsel were competent and non-coercive, but recognizes the pressure a defendant can feel to plead guilty and allows each defendant to withdraw their guilty plea.

---

[2] Moreover, contrary to the Government's claim, Mr. Nales' statements absolving Mr. Davis of the 1182 West Farms Road robbery has a direct impact on Mr. Davis' trial calculus, particularly with regard to his sentencing exposure. Because the conspiracy charged in Count One of the Information in which Mr. Davis pled guilty involves a conspiracy to commit multiple substantive offenses – in particular, a robbery at 1182 West Farms Road and a robbery at East 174th Street, Count One is treated as if it were separate counts, each charging conspiracy to commit one of the substantive offenses. *See* U.S.S.G. § 3D1.4. Given that Mr. Davis was pleading guilty to – and would be facing a longer sentence for – a crime that the Court said he was not involved in, it is nonsensical for the Government to suggest that such a statement "would have had *no* impact on the defendant's strategy." (Resp. at 36) (emphasis in original).

In *United States v. Franco*, No. 00 CR 300 (LMM), 2003 WL 21305352 (S.D.N.Y. June 6, 2003), the defendant was facing the prospect of a life sentence if he did not enter a guilty plea. He claimed that he was coerced by his attorney to enter the plea. The court specifically found that there was no coercion on the part of his attorney. According to the court, "it is surely possible, in a given case, that a defendant, under perfectly proper advice from fully competent counsel, may, at the time of the plea, under certain circumstances, be acting less than fully voluntary." *Id.* at *5. The court then turned to the defendant's state of mind at the time he entered his plea. The court was concerned that the defendant was prevented from taking time to fully reflect on his options when entering his guilty plea. The court also relied on the fact that the Government had failed to demonstrate any prejudice. Notably, the court described a similar hearing pursuant to Rule 11 as the Government argues took place in this case. But despite the Rule 11 hearing and despite competent counsel, the court still permitted the defendant to withdraw his guilty plea. And while the Court in this case certainly did not rush Mr. Davis into pleading guilty, we submit that, as discussed *supra*, the convergence of the threat of a life sentence, the comments by the Court concerning Mr. Nales at the plea hearing and the pressure asserted by his attorney for Mr. Davis to plead guilty resulted in Mr. Davis not taking sufficient time to fully reflect on his options when entering his guilty plea. Additionally, like in *Franco*, the Government here has made no real effort to show prejudice.[3]

*United States v. Tateo*, 214 F. Supp. 560 (S.D.N.Y. 1963), is also relevant. The issue in *Tateo* that Judge Weinfeld was considering was whether the defendant's plea was

---

[3] *See also United States v. Moore*, No. 00 CR 1077 (LMM), 2004 WL 1542262, at *1 (S.D.N.Y. July 8, 2004) ("While the Court cannot find that defendant's counsel at the time he entered the guilty plea was ineffective or coercive, and while, in the Court's view, the plea allocution was complete and satisfactory, nevertheless, upon the evidence presented at the hearing, the Court concludes that, at the time defendant entered into the plea agreement and pleaded guilty, he felt pressured . . . to a degree that he did not fully reflect on his options with the assistance of counsel."); *Rowe*, 2005 WL 659197, at *3 (finding that "[t]he defendant was not, on January 21, 2004, sufficiently focused on the circumstances then obtaining . . . to have intelligently considered his options").

voluntary where he was threatened with life imprisonment if he was convicted at trial. The defendant argued that "the fear of spending the rest of his life in prison under a life sentence plus consecutive sentences led him to plead guilty; that it was not voluntary, but a coerced plea." *Id.* at 564. While the court noted that the district court had no power to sentence the defendant to consecutive sentences, that was not critical to the court's analysis. What the court focused on, and what is instructive about this case, is the defendant's subjective state of mind. According to the court, a defendant's "subjective reaction cannot be disregarded in appraising whether or not the defendant had the required free will of mind at the time of his guilty plea." *Id.* at 565. Under the circumstances – specifically under the threat of life imprisonment and pressure to plead guilty – the court found that the plea of guilty was not voluntary. Mr. Davis faced a similar situation. He was being threatened with life imprisonment and being pressured by his attorney to plead guilty. And unlike the defendant in *Tateo*, Mr. Davis was grappling with the fact that the Court had specifically raised with him the fact that a co-defendant had claimed that Mr. Davis was not involved in one of the robberies to which he was pleading guilty.

The two final cases cited by Mr. Davis are similarly instructive in terms of the framework to approach a motion to withdraw a guilty plea. *United States v. Garcia*, 2004 WL 3019501 (S.D.N.Y. Dec. 29, 2004), discussed *supra* at Section I.A., highlights the gravity of the rights at stake when a defendant gives up his right to a trial. And *United States v. Millan-Colon*, 829 F. Supp. 620 (S.D.N.Y. 1993), is instructive in terms of the weight to be given the issue of whether the Government will be prejudiced. In exercising its discretion in determining whether to grant a motion to withdraw a guilty plea, the court stated "[e]ven if a defendant fails to demonstrate any valid ground supporting a motion to withdraw a guilty plea, in balancing the

equities, the Court may grant the motion if little or no prejudice to the Government will result." *Id.* at 636 (citations omitted).[4]

Thus, contrary to the Government's arguments, motions to withdraw guilty pleas are often granted in this district and the case law sufficiently supports the Court granting Mr. Davis' motion in this case.

## CONCLUSION

For the reasons set forth above and in Defendant's opening brief, Defendant respectfully request that the motion be granted in its entirety.

Dated:   October 19, 2012
         New York, New York

                                        Respectfully submitted,
                                        Linklaters LLP

                                   By:  /s/ Martin S. Bloor
                                        Lance Croffoot-Suede
                                        Martin S. Bloor
                                        Chris Howard
                                        1345 Avenue of the Americas,
                                        New York, NY 10105
                                        (212) 903-9000
                                        (212) 903-9100 (fax)

                                        *Attorneys for Alfredo Davis*

---

[4] The Government claims that this holding is dicta – it is not as it is one of the central holdings in the case. The Government also maintains that *United States v. Rosen*, 409 F.3d 535 (2d Cir. 2005) and *United States v. Torres*, 129 F.3d 710 (2d Cir. 1997) somehow act to overrule *Millan-Colon*. They do not as both *Rosen* and *Torres* recognize that it is appropriate for a court to consider the prejudice to the Government in balancing the equities when deciding a motion to withdraw a guilty plea. *See Rosen*, 409 F.3d at 546; *Torres*, 129 F.3d at 715.