UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
UNITED STATES OF AMERICA,

           Plaintiff,

  -against-

ALFREDO DAVIS,

           Defendant.

------------------------------------------------------------- X

**ORDER AND OPINION
DENYING MOTION TO
WITHDRAW GUILTY PLEA**

11 Cr. 295 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Defendant Alfredo Davis pled guilty to conspiring to commit two robberies and brandishing a firearm in connection with those robberies. He moves now pursuant to Rule 11 of the Federal Rules of Criminal Procedure to withdraw his plea on the ground that it was involuntary. The motion is denied for failure to show a "fair and just reason" that would justify withdrawal.

**Facts**

       This case involves eight gunpoint robberies of small grocery stores, also known as bodegas, in the Bronx, New York, from January to March 2011. Alfredo Davis and two co-defendants, Jose Nales and Tyrone Alston, were charged with the crimes. All three have pleaded guilty, and Nales and Alston have been sentenced. Davis moves to withdraw his guilty plea.

       A federal grand jury indicted Davis, Nales, and Alston, on August 8, 2011. Davis was charged with six counts: a Hobbs Act conspiracy to commit eight robberies in violation of 18 U.S.C. § 1951; committing three of the robberies, on January 7, February 26, and March 15,

2011, in violation of 18 U.S.C. §§ 1951 and 1952; and carrying firearms in furtherance of two of the robberies, on February 26 and March 15, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i), and 922. Co-Defendant Nales was included in the conspiracy charge, the robbery charge of February 26, and the gun charge related to that robbery. Co-Defendant Alston was included in the conspiracy charge and the January 7 robbery charge.

On February 26, 2012, Nales pled guilty to the robbery charged against him, that of February 26, 2011. Nales was sentenced on July 27, 2012, to sixty months in custody, followed by three years of supervised release. On July 11, 2012, Alston pled guilty to resisting arrest in violation of 18 U.S.C. §111(a).[1] Alston was sentenced on October 4, 2012 to time served (seven days), followed by twelve months supervised release.

Davis, on September 22, 2011, filed a motion to suppress post-arrest statements, physical evidence, and, particularly, a cellphone seized at his arrest and evidence therefrom. An evidentiary hearing held December 6-7, 2011, showed that a cellphone used in the robbery had been traced to a particular apartment pursuant to a New York Supreme Court warrant; that New York City police gained entry to the apartment with permission from the occupants;[2] and that the phone belonged to Davis. I ordered further briefing on the scope of the permission given to enter the apartment and the lawfulness of obtaining evidence from the contents of the cellphone. I scheduled oral argument for February 8, 2012.

Davis entered plea negotiations with the government with the Court's decision on his motion still pending. Davis' lawyer reported that the government told him that should Davis proceed towards trial, the government would seek to supersede the indictment by alleging, under

---

[1] Before his guilty plea, Alston had moved to suppress evidence. An evidentiary hearing, held February 7, 2012, showed that he had been followed from the scene of the bodega robbery of January 7, 2011, and later arrested. His motion was denied. Summary Order Denying Defendant Alston's Motion to Suppress, Feb. 29, 2012, Doc. No. 49.
[2] The parties dispute if permission extended only to the entrance foyer or beyond.

2

18 U.S.C. §924(c), that firearms were used in each of the eight robberies involved in the Hobbs Act conspiracy, implying a mandatory minimum sentence of 182 years.[3] Davis and the government reached an agreement for Davis to plead guilty to a Hobbs Act robbery conspiracy involving only the robberies of February 26 and March 15, 2011, and one count of brandishing a firearm in connection with the Hobbs Act conspiracy. On these charges, Davis faced a mandatory minimum sentence of seven years and a Sentencing Guidelines range of 125 to 135 months imprisonment. See Plea Agreement, Letter from Hon. Preet Bharara, U.S. Attorney, to Jesse Siegel, Esq., attorney for Alfredo Davis (Apr. 18, 2012).

Davis scheduled a plea allocution before me on April 20, 2012. At the allocution, I advised Davis,

> a plea of guilty puts an end to all potential objections that you have to the legal sufficiency of the indictment, to any of the activities that flow from the indictment or the superseding information. You are pleading guilty because you are really guilty as you will tell me and all defenses are ended. If you want to stay with your defenses, you should not be pleading guilty. Do you understand that?

Apr. 20, 2012, Tr. at 2:13-21. Davis answered, "Yes." Id.

I advised Davis that Jose Nales, one of his two co-defendants on the conspiracy charge and his co-defendant on the charge of robbery on February 26, 2011, had told me, at his plea allocution, that Davis did not commit the robbery of February 26, 2011:

---

[3] The parties do not elaborate as to how a 182-year mandatory minimum sentence would be calculated. Our own calculation suggests that Davis faced a long sentencing range, but less than the government calculated. 18 U.S.C. §924(c)(1)(A) requires a mandatory minimum sentence of 7 years for brandishing a firearm during or in furtherance of a crime of violence. The Sentencing Guidelines also provide for a sentencing range of 63 to 78 months for each robbery in violation of 18 U.S.C. §1951, assuming a 5-level enhancement for brandishing a firearm and a Criminal History Category of II, which was suggested by the Plea Agreement. U.S.S.G. §2B3.1; Plea Agreement, Letter from Hon. Preet Bharara, U.S. Attorney, to Jesse Siegel, Esq., attorney for Alfredo Davis 5-6 (Apr. 18, 2012). Assuming that the superseding indictment would have charged Davis with eight robberies with sentences of 63-78 months and eight firearm counts with minimum sentences of seven years each, Defendant would face a sentence of 98 years ((5.25·8) + (7·8)) or, if sentencing used the tops of the ranges, 108 years. Grouping possibly could reduce the sentence, U.S.S.G. §§3D1.1-3D1.4; Career Offender status possibly could increase the sentence, U.S.S.G. §4B1.1. Davis was 27 years old at the time of his plea.

3

> You should both know also [Davis and Jesse Siegal, Esq., his attorney] that one of the co-Defendants has told me that you are not guilty. Of course, that has nothing to do with his plea. He pled guilty but he told me that you are not guilty.

Id. at 3:14-17. I then advised Davis that should he plead guilty, he would be giving up his motion to suppress and that I would not be deciding his motion. Davis consulted with his attorney off the record. I asked, "Do you want to proceed, Mr. Davis?" Davis answered, "Yes." Id. at 4:3-19.

I asked Davis if anyone had pressured him in any way to cause him to plead guilty, Davis answered, "No." Id. at 8:18-20. Defendant expressed his satisfaction with the legal services of his attorney, Jesse Siegel. Id. at 8:12-17. Davis concluded the allocution by admitting his guilt:

> THE COURT: Mr. Davis, are you offering to plead guilty because you believe that you are in fact guilty of both crimes charged?
>
> THE DEFENDANT: Yes.

Id. at 19:15-18. I then questioned Davis on the details of the crime to which he was pleading guilty:

> THE COURT: Tell me what you did.
>
> THE DEFENDANT: I agreed with somebody to rob the store.
>
> THE COURT: Rob a bodega.
>
> THE DEFENDANT: Yes.
>
> THE COURT: When did you reach this agreement?
>
> THE DEFENDANT: Between January and March 15, 2011.
>
> THE COURT: These are the bodegas in the Bronx that [Assistant U.S. Attorney] Moyne mentioned?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you carry a gun?

4

THE DEFENDANT: I didn't carry no gun [sic], no.

THE COURT: Someone else you know of carried a gun?

THE DEFENDANT: Yes.

(...)

THE COURT: The person who committed the robberies?

THE DEFENDANT: Yes.

THE COURT: You were aware that he was carrying a gun?

THE DEFENDANT: Yes.

(...)

THE COURT: Was it a plan of the robbery that someone would be carrying a gun?

THE DEFENDANT: Yes.

THE COURT: In other words, that would be the way to get cooperation from the person in the store?

THE DEFENDANT: Yes.

THE COURT: The idea was to get money from the store?

THE DEFENDANT: Yes.

(...)

THE COURT: Was it part of the plan to show the gun to get the people to cooperate and give you over the money?

THE DEFENDANT: Yes.

(...)

THE COURT: You knew of course this was wrong?

THE DEFENDANT: Yes, I do.

5

Id. at 19:19-25, 20:1-25, 21:1-10. I found Davis' plea of guilty to be voluntary, that he understood the consequences of his plea, and that there was an independent basis for finding his guilt. See Fed. R. Crim. P. 11(b)(2). I therefore accepted his plea of guilty. Apr. 20, 2012, Tr. at 21:11-17.

### Davis' Motion to Withdraw His Guilty Plea

Davis argues he immediately regretted pleading guilty and informed his attorney the same day that he wanted to withdraw his plea. Davis Aff. ¶¶7-8. Davis' attorney at the time, Jesse Siegel, Esq., confirms Davis' statements, adding that "Mr. Davis appeared tortured about the decision to plead guilty." Siegel Aff. ¶6. Siegel continues, "When the day came for Mr. Davis to plead guilty, I was unsure he would go through with it, particularly because he had been so adamant about pursuing the outstanding suppression motion and proceeding to trial." Id.

Davis' decision to seek withdrawal of his plea of guilty caused Mr. Siegel, on June 1, 2012, to ask to be relieved as counsel, citing a conflict of interest between himself and his client. Following a hearing on June 20, 2012, I appointed David Greenfield as conflict counsel, to counsel Mr. Davis regarding withdrawal of his plea. Mr. Greenfield reported, on August 7, 2012, that Davis did in fact wish to withdraw his plea. I then discharged Messrs. Greenfield and Siegel as Davis' counsel and appointed Lance Croffoot-Suede, Esq., the CJA lawyer on duty, to represent Davis for all purposes.

Davis filed his motion to withdraw his guilty plea on October 10, 2012, claiming his plea was not "voluntary." Davis argues that he pled guilty at the insistence of counsel and under the government's threat to file a superseding indictment exposing him to a prison sentence

6

of 182 years. Davis does not protest his innocence, nor allege that he received ineffective assistance of counsel. The government opposes Davis' motion.

Davis argues that Nales testified to Davis' innocence and that my comments at his allocution, advising Davis of co-Defendant Nales' statement, caused him to be attentive to its implications. As Defendant puts it in his supporting memorandum of law: "[Mr. Davis] did not expect to hear from the Court that it had exculpatory information absolving him of the very robbery for which he was pleading guilty." Memorandum of Law of Defendant Alfredo Davis in Support of His Motion to Withdraw His Guilty Plea 9.

This was hardly the first time that Davis learned or had heard of Nales' statements that Davis was innocent of the February 26, 2011, robbery. Nales repeatedly said that about the robbery of February 26, 2011—one of the three robberies for which Davis was charged and one of the eight robberies which made up the Hobbs Act conspiracy charge against him. At the time of his arraignment, and in the presence of Davis, Nales stated on the record, "[T]his man shouldn't be on my case if he didn't to [sic] do no robbery with me." Apr. 15, 2011, Tr. at 2:15-16. Nales later said, indicating Davis, "What I am saying he is not the person…" Id. at 5:25, 6:1. On May 2, 2011, Nales swore to an affidavit stating, "I, Jose Nales, do solemnly swear and affirm that on the date of February 26, 2011, during a robbery that I am accused of,…that Alfredo Davis was in no way involved or participated in the incident." The affidavit was given to both the Court and Davis' attorney.

## Discussion

A district court has broad discretion to decide whether or not to grant a defendant's motion to withdraw his plea of guilty. See, e.g., United States v. Saft, 558 F.2d 1073,

1082 (2d Cir. 1977). I have to decide if Defendant has a "fair and just reason" to justify withdrawal of his plea. As the criterion is stated in Rule 11,

> A defendant may withdraw a plea of guilty...after the court accepts the plea, but before it imposes sentence if...the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Cr. P. 11(d). Normally, motions to withdraw guilty pleas are "liberally granted," United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992). However,

> society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice.

United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008).

A defendant seeking to withdraw his plea bears the burden of demonstrating that there are valid grounds for the withdrawal. Gonzalez, 970 F.2d at 1100. A change of heart is not sufficient. Id. ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea."). Nor is it sufficient that a defendant wishes to change his trial strategy, for a plea of guilty is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim,...but 'a grave and solemn act' which is 'accepted only with care and discernment.'" United States v. Barker, 514 F.2d 208, 221 (D.C. Cir. 1975) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

In order to withdraw a plea of guilty, a defendant must show a "fair and just reason" for allowing him to do so. A "fair and just" reason can be found using four factors: the voluntariness of the plea; the time that elapsed between the plea and the motion; if the defendant claims his innocence; and if the government would be prejudiced by withdrawing the plea. Doe,

8

537 F.3d at 210; United States v. Rosen, 409 F.3d 535, 548 (2d Cir.2005) ("Where the motion argues that the plea was not voluntary, a fortiori the court must focus on voluntariness.").

      Defendant bears the burden of raising a "significant question" as to whether his plea was voluntary. Doe, 537 F.3d at 211. The standard is strict. Most pleas that are not induced by threats or misrepresentations or entered into by those mentally incapable of rationally deciding their best course of action, are upheld as voluntary. As the Second Circuit has said, "a plea...is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988). The Supreme Court has instructed, similarly, that a "plea of guilty entered by one fully aware of the direct consequences...must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady, 397 U.S. at 755.

      U.S. courts, time after time, have upheld the plea bargaining process, which, though at times frightening and perhaps even coercive in light of the few good options that might be available to a defendant, is an essential feature of our criminal justice system. Bargaining to avoid a longer sentence does not by itself make a defendant's choice to plead guilty, difficult as it may be, involuntary. United States v. Marquez, 909 F.2d 738, 742 (2d Cir. 1990).

## Analysis

      Defendant Alfredo Davis fails to provide a "fair and just reason" that would justify the withdrawal of his guilty plea and does not raise a "significant question" as to the

9

voluntariness of his plea. In struggling to find a justifying reason, the Defendant primarily cites my comment at his allocution that co-Defendant Nales claimed Davis was innocent of the February 26, 2011, robbery. However, Defendant knew and had heard of Nales' statements numerous times before I commented on them at Davis' allocution. Defendant argues that my comments about Nales' statements gave them importance, but that is hardly a sufficient reason to vitiate Davis' guilt. Davis made clear his desire to plead guilty, even after I made sure he was aware of Nales' statements. Neither a defendant's "bald statements that simply contradict what he said at his plea allocution," nor an after-the-fact change of heart, are "fair and just reasons" for permitting a plea of guilty to be withdrawn. United States v. Torres, 129 F.3d 710, 715 (2d Cir.1997); Gonzalez, 970 F.2d at 1100.

After all, Davis was charged, not only of committing the robbery of February 26, 2011, with Nales, but of committing the robberies on January 7 and March 15, 2011, with others, plus an eight-robbery Hobbs Act conspiracy, plus brandishing a firearm in connection with the conspiracy. Nales' assertion of Defendant's innocence only as to a single robbery, even if it were to be accepted, leaves Davis exposed to seven other robbery counts, plus the conspiracy and weapons-brandishing charges.

Mr. Siegel, Davis' lawyer, "urged Mr. Davis to consider pleading guilty." Siegel Aff. ¶3. As was his duty, he "ensured that Mr. Davis understood that if he proceeded to trial and did not plead guilty, the Government could pursue charges that would carry a mandatory minimum sentence of 182 years if he was convicted." Id. At his allocution, Davis expressed satisfaction with his counsel's services. Apr. 20, 2012, Tr. at 8:12-17. Davis cannot, and does not, allege ineffective assistance of counsel. Surely, Davis took "the time to fully reflect on the options" before him. United States v. Franco, 2003 WL 21305352 at 6* (S.D.N.Y. June 6, 2003).

10

In some circumstances, a "swift change of heart" can be "strong indication that the plea was entered in haste and confusion," United States v. Barker, 514 F.2d 208, 222 (D.C. Cir. 1975). That is not the case here. Davis had ample time to consider his case rationally in the eight months between his indictment and plea allocution. Defendant was given time to consult with his attorney before and during his allocution, yet, after each pause in the proceedings, he stated his desire to continue with his guilty plea. Mr. Siegel's services and advice to Mr. Davis were entirely appropriate. Davis has no basis to argue that his plea was involuntary.

The threat of a long sentence is not enough to transform an otherwise voluntary plea into an involuntary one. Brady, 397 U.S. at 751-52 ("We decline to hold...that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."). There are benefits and drawbacks for defendants who choose to engage in the plea bargaining process, but it is still a voluntary choice.

Clearly, Davis' plea satisfies the standards of voluntariness. Davis' plea was entered into by "one fully aware of the direct consequences," and was not "induced by threats..., misrepresentation, or...promises that are by their nature improper." Brady, 397 U.S. at 755.

As for the other considerations for evaluating a defendant's motion to withdraw his guilty plea, I find his motion is timely and that the government has not shown that it would be prejudiced. Indeed, as a general matter, "withdrawal shortly after the event will rarely prejudice the Government's legitimate interests." Barker, 514 F.2d at 222. However, even apart from timeliness and lack of prejudice, Davis still has to show a "fair and just reason" to withdraw his

11

plea. Gonzalez, 970 F.2d at 1100. And he does not do so, for his only reason is his concern that he will have to face a very long jail term if he stands trial and is convicted.

## Conclusion

Defendant's motion to withdraw his plea of guilty is denied. Davis will be sentenced March 8, 2013, at 11:00 a.m. The Clerk shall mark the motion (Doc. No. 79) terminated.

SO ORDERED

Dated:  November 29, 2012
        New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

12